Thank you. May it please the Court. There are two main points in this appeal. The first point is, or question is, is this case properly in Federal court at all? We submit the answer is no. The second question is, did the district court err in granting summary judgment to State Farm? We submit the answer to that question is yes. I will save five minutes of my time for rebuttal, if I may, and I will reserve the jurisdictional question, my remarks on that, to the end of my remarks this morning. That's an issue that I feel very much is the Court's prerogative. It's something the Court knows better than any attorney what its jurisdiction is. I'm here to offer the Court my views on Hawaii law and Hawaiian insurance coverage law in particular, which is an area where I have practiced for many years, and I feel I can offer the Court more guidance there than I can on the difficult jurisdictional question. The question, substantive question presented by the case, is whether or not an injury that occurs to a police officer who is acting to prevent an unlawful use and to detain the unlawful user of a car, does that arise out of the use of a vehicle, as that phrase is used in an insurance policy? The district court's problem, I think, with this case is the result of where you cut it off. It's easy in the cases where people are still in vehicles, where vehicles are still moving, for someone to say, well, the vehicle somehow contributed as a moving platform or it enabled somebody to get closer to the target. But once people exit the vehicle, then if you say that the causal sequence is still continuing, where do you stop it? Now, let me tell you the problem I have with this case. Now, if Officer Haskell was shot by Mr. Moses before he ever attempted to break into the police squad car, and well, after he had already been apprehended for trying to break into the Alamo car, why did Officer Haskell's injuries arise out of the use of a vehicle? The user operation of a vehicle, and which vehicle in particular? The police squad car or the Alamo car? Well, I think that our primary argument has been that it arose out of the use of the Alamo vehicle. And the law is very clear that the use that originates the sequence of events doesn't have to still be occurring at the moment of injury. And we cite a number of cases on that point. So it's arising out of a use. So if there's a use in that, I mean, one example is where the person parks their car and then leaves it there. That's a very simple example. And it blocks the road, and someone at night, it's unlit, and someone at night runs into it. Now, somebody stopped using their car when they parked it, but the injury occurs after their particular use has ended. The other case is, for example, where the Good Samaritan approaches the vehicle after the accident to render aid. Another one was where a person – we cite all these cases in the briefs, and I apologize for not remembering the names of each one. But another one was where a person came to the aid of an accident victim and had to hold them in an awkward position for an hour and suffered a back injury. All of these are happening after the use of the car has stopped. But the point is that the events that happen immediately after the use stops are directly connected in a very natural and probable and foreseeable way from the use. And that's where I think we can give the district court some comfort, that you can draw some lines that will not open this up to just an infinity of claims. The point here is that, Officer Haskell, if we think about our society, we've set up a very complicated system around automobiles. I mean, there are lots of different parts to it. One of them is the insurance part, and that's there to spread the risk of this large two-ton, one-ton object moving at 30 and 40 miles an hour all around our streets. But we actually have a whole system of criminal law that is uniquely for automobiles. I think as we pointed out to the district court, there is no lawnmower theft patrol in the Honolulu Police Department, but there is a motor vehicle theft patrol specifically designated to go out and look for people who are unlawfully using or stealing or stealing from automobiles. There are crimes involving the use of automobiles that are specific to automobiles. UCPV, unlawful control of a propelled vehicle. UEPV, unlawful entry. DUI, negligent homicide, vehicular homicide. Society has all these crimes that relate specifically to the use of an automobile. Assuming that's true, would you apply your theory to the specific facts of this case? Yes. We ask Officer Haskell, we say, please go out and patrol in your car for people making unlawful uses of cars. If you see them, you are duty-bound by law. You as a police officer have an absolute legal duty to enforce these laws and stop people and detain them and arrest them if you see a violation. So he's the trigger here that they were looking for someone in a car? Is that the connection? I think when you ask that kind of question, Your Honor, I take back to the cases that say every case turns on its own facts. In this case, I think that is one of the factors that a jury would have been able to put into the equation to decide whether this causal link was broken by an independent act, an act of independent significance. And that's really where the case comes down. Now, what I'm trying to show, Judge Nelson, in response to Judge Nelson's question, is that you have this causal chain that starts with the use. The person is unlawfully using the car. The officer is on patrol looking for those kinds of uses. When he sees one, he has to do something about it. He has to take that person out of the car, protect that vehicle, detain the person and arrest them. There's no choice. There's no independent decision that he can make, say, well, you know, I'll let this one slide. He can't do that. The fellow – I'm just trying to understand how far this goes in going to the jury. Yes. If the fellow goes to the house and is breaking into a house after having driven there in the car and the scuffle takes place, the injury takes place while he's breaking into the house, is this still a chain of events that? No, I don't think so, because the use of the car is not what triggered the chain of events. Only in the sense – He's looking for a guy who's – you know, he's told to look for a guy who's in a car, finds the car. I just – I don't – There are – well, there are cases that have said where the officer just finds somebody who happens to be in a car and he's just arresting a suspect who could have been on the sidewalk, could have been in a car, and he's suspected of something else or some ancient crime, that that doesn't arise. That's a mere citus case. And what I'm suggesting to the Court is that this is not a citus case. It seems to me that what you're arguing is that because he was there looking for the man in the car, that that is the link. More – I'm just not sure that you're saying that there's a question for the jury. Well, I actually don't think there is. I think that we should have won summary judgment. I moved for summary judgment as well. But at a very minimum, I think the judge cannot say what she said, which is that there is absolutely no way that a jury could ever find that the causal link remained unbroken. That's what she said. Can you help me? Because these are so fact-specific. Yes. Just by running through the facts from your standpoint – well, on summary judgment. So from your standpoint, what happened here? And then sort of tie that into your notion of use under the policy. This is an area of the island that is relatively remote. There are no buildings there. You can only reach it by car. The tourists like to go there because it's very scenic. They park their cars and leave them. And it's next to a community that's a low-income community and a relatively high crime. So there is a high level of car theft. A particular detail of the Honolulu Police Department is assigned to guard this area and to watch these cars and to make sure that no one loses their valuables or loses their car. Officer Haskell's job was to go into that area, look for this kind of activity. He saw Moses actually with the door open inside the car with a screwdriver, and then Moses popped his head up and they made eye contact. So he saw Moses, who had entered the car with the screwdriver. He signaled to Moses, or Moses himself decided voluntarily, it's not clear which, to come over and try to explain that this is my car or my family's car. But Officer Haskell wasn't buying that. He saw Moses was larger than he was. He called for his backup. And they're very close by, I mean, literally about 400 or 500 yards away. So it could take a minute maybe for the backup to get there, two minutes. The district court judge felt it was around three minutes total between the initial sighting of Mr. Moses and the actual discharge of the gun. But we're talking, and, you know, I'm reminded today how fast three minutes goes by when I sit up here and look at that clock. But we're talking a very short period of time. The other two officers came, and Mr. Moses did not want to submit to arrest and did not really want to remain there. He started pacing and moving. And in the struggle to subdue him, to get him handcuffed, a gun came loose from one of the officers' belt and discharged. And there's a great question of fact. One of the things that the trial judge said or the lower court said is that this was an intentional shooting, and that's one of the factors I'm going to find as cutting off the causal link from the initial use of the car. And that's a question of fact. In fact, one of the additional submissions that we made last week is to let you know that the appellate court has reversed Moses' conviction, and he's getting a new trial on this very question of whether he acted intentionally or not. So even the use of the conviction here, it would merely be evidence at the most. And I don't even think it's evidence anymore. So from your standpoint, this gun came out accidentally and discharged accidentally. Certainly. That may or may not be true, but that's your contention on summary judgment. That is one of the things that we believe to be the case, correct. But we would submit, even with intentional shootings, cases are clear that you still don't break the chain of causation with an intentional shooting necessarily. You have to look at the facts and there are other factors. But we think that this is not a case where he's simply arresting someone who was already a fugitive who happens to be in a car. The point is he is charged with stopping that use. This is very much like a carjacking victim, for example, who comes out of his driveway and sees somebody trying to steal his car and wrestles with him and tries to prevent him and grabs him. And I think the district court would have to agree that if the person was holding onto the car and got dragged a few feet and injured that way, that would arise out of the use of the car. If the thief pushed him or her down on the ground and then jumped in and drove off, where do you draw that line? And that's a place for the jury to decide if there is an act of independent significance outside the transportation use of the vehicle. And who is using the car, in your view, to bring it within the use provision of the policy? One or both of these men? Both of them. There's a Hawaii case, the Olson case. The ambulance driver, this court certified the question, was the ambulance driver using a vehicle? Because that's the only way he was going to get insurance if he was. He was outside the vehicle placing flares on the ground nearby at the scene of an accident. And the Hawaii Supreme Court said that safeguarding a vehicle or protecting it is a use. So in that sense, Officer Haskell, in this case, by removing the thief and detaining him so that he can't get back in the car and go off in it and can't get to its contents, putting him on the side and handcuffing him, he is also safeguarding the car. And conceptually, I don't see a real significant difference between placing the flares around a vehicle or removing the person who's attacking the vehicle. But the driver in the vehicle case with the flares, it was the driver of the car who placed the flares out, was it not? No. In the Olson case, it's my understanding that the ambulance attendant himself was actually placing flares. That's what he was doing at the time. The question this court certified was, was he using a vehicle? And which vehicle was he placing flares to protect, not the ambulance? I believe it was the scene around the ambulance. The car in the accident. Excuse me for interrupting. I'm sorry. The ambulance was – I'm a little fuzzy again on the facts. But my recollection is that – and Mr. Miller knows these cases probably better than I do. But the flares were placed around the ambulance. They may have also encompassed the accident vehicle as well. Okay. In this case also, though, Mr. Moses was using a car because the use is defined as entering, occupying a lighting from a car or unloading it. And he clearly entered it. He opened the door. His head at least half his body was inside it. He had his screwdriver out. He was doing something in there with the screwdriver. He had entered it. Then he alit from it. And he also was unloading it in the sense that he took a backpack out of it. That was – there's some question whether he was trying to steal the car or steal the contents of the car. And the facts are unclear on that. I have used up my first 15 minutes. I would like to reserve the time that I have remaining for rebuttal. But just to say that the district court relied on three factors to say the chain of causation was cut off. One was the time which the cases make clear. There's no bright line there. Number two was the fact that Haskell made an arrest. We submit that was a natural and inevitable consequence of the use. And number three was the fact that the shooting was intentional. There's not only a question of fact about whether it's intentional, but the State Farm policy language makes clear that the shooting itself is the end of the chain. So it can't cut the chain off. The way the policy is written, it says the accident arising out of the use. Accident is the shooting. The injury arises from an accident or caused by an accident arising out of the use. Thank you. Good morning, Your Honors. May it please the Court. I'm Richard Miller on behalf of State Farm. Addressing very quickly the issue that Mr. Bickerton raised about the reversal of Mr. Moses' conviction, that's wholly irrelevant. We would concede in this case that from Officer Haskell's standpoint, the shooting was an accident. Certainly Officer Haskell didn't expect it to happen. The Kerang case and the Ganaron case say that when viewing a shooting or a stabbing, the loss is viewed from the perspective of the person who is claiming coverage, in this case Officer Haskell. So we'll call it an accident. It doesn't matter at all. The question instead is whether or not that shooting arose out of the use of the Alamo rent-a-car. That's the dispositive issue. So for purposes of this appeal, the reversal of Mr. Moses' conviction is irrelevant. The issue remains the same, namely whether the shooting arose out of the use of the Alamo car. And in that respect, Your Honors, this is an issue with which the Hawaii Federal Court is intimately familiar. There are now four reported cases on this exact point, namely when does a tort arise out of the use of a vehicle. We've cited those four, but they are Fernandez, Asuncion, Cage, and now Judge Mulway's decision in Haskell. All four of these cases were decided in favor of the insurance company, and all four adopted the causal connection, what we call the Kerang test, to view or to analyze the issue of whether or not the shooting or the stabbing arose out of the use of a vehicle. I'll discuss those four cases in a moment, but it's critical that we adopt or that we analyze the correct test here when viewing whether there's coverage. The correct test is the test that we've cited in our papers, namely the Kerang test, which is a 1993 Hawaii Supreme Court case, and that's the case that enunciates the three-prong test to determine whether a shooting or a stabbing arises out of the use of a vehicle. And the prongs are, did the vehicle, in this case it would be the Alamo vehicle, was the Alamo vehicle an active accessory in causing the harm? That's prong number one. Prong number two, was the vehicle, in this case the Alamo vehicle, was it being used for transportation purposes at the time of the shooting? Clearly the answer is no, and by the way, clearly the answer is no to prong number one as well. Prong number three, and by the way, all three prongs must be satisfied to find coverage. Prong number three is whether there were any independent acts of significance that would break the causal link between the use of the Alamo car and the shooting. And again, clearly in the instant case, there were multiple acts of independent significance, and the easiest way to measure that, Your Honors, is simply by looking at Haskell's opening brief. There are four pages of text devoted to an explanation of the facts that occurred between the time Moses left the Alamo rent-a-car. That occurs on page 8 of the opening brief. The shooting occurs on page 11. So there are four full pages of independent acts that take place between the time Moses leaves the car and Officer Haskell is shot. And as Mr. Bickerton described, this included Officer Haskell confronting Moses, Officer Haskell calling for backup, two fellow HPD officers arriving in their vehicle to the scene, getting out. Mr. Haskell starting to walk away. One of the other officers, Officer Chong, collaring him and bringing him back to sit down. A discussion as to whether or not Mr. Moses would be put under arrest. A decision made to put him under arrest. The effort made to put him under arrest. And during that, a scuffle occurs, and Moses grabs Officer Veneri's gun. Significantly, Officer Veneri's gun was the one that shot Officer Haskell. That gun wasn't even present on the scene when Moses was in the Alamo vehicle. The accident or the shooting, the weapon arrived on the scene long after Moses exited the car. In Judge Mulway's analysis as to the amount of time that transpired between Moses leaving the car and the shooting, she didn't say it took three minutes. She had Mr. Bickerton conceded her argument that it was at least three minutes. Who knows how long it might have been, but at the very least it was several minutes for backup to arrive and a confrontation, etc. So in any event, Your Honors, the key test that needs to be applied here is the Kerrang test. I raise this point because there's dispute in the briefs over what is the appropriate test. Haskell urges the court to use the Dawes test. And Dawes is a 1994 Hawaii Supreme Court case decided one year after Kerrang. Dawes is the very liberal test that we call the chain of events test, and that's the test that Haskell seeks to employ here. It is not the correct test because Dawes measures something very different from the instant issue. The instant issue is when does a shooting arise out of the use of a vehicle? Dawes measured when does somebody who has left the vehicle physically, when does that person still qualify as an insured person under that vehicle's coverage so that that person could claim U.M. coverage in the event of a loss? Let me indicate the facts of Dawes as opposed to the instant scenario. And by the way, Olson, the case with the ambulance driver and the flares, that's a Dawes case. The question in Olson is not whether or not the loss arose out of the use of the uninsured vehicle. The question rather was whether or not Olson qualified as an insured person under the ambulance policy. In Dawes, Dawes' decedent, a lady named Brockhorn, did not have any insurance coverage of her own. She was from Oahu visiting the Big Island. She was a passenger in a vehicle operated by a friend named Shimp. Shimp's Jeep, in which the group was riding, Shimp's Jeep did have U.M. coverage. In other words, it provided coverage for all insured persons who were injured as a result of an uninsured motorist. The Jeep broke down. Ms. Brockhorn got out of the Jeep and began to walk for assistance. Twenty to 25 minutes later, a mile down the road, she is struck and killed by an uninsured motorist. So the question was not, as in the instant hassle case, did Ms. Brockhorn's death arise out of the use of an uninsured vehicle. It was very clear in that case. Ms. Brockhorn was killed. She was run over and killed by an uninsured motor vehicle. So that was very clear. Rather, the issue in Dawes was could Ms. Brockhorn qualify as an insured person under the Jeep policy? Even though she had exited the Jeep, could she still qualify as an insured person so as to trigger U.M. coverage for herself? And as to that issue, whether or not a person qualifies as an insured, as to that issue, the Hawaii Supreme Court adopted this liberal chain of events test, which Mr. Bickerton is urging this Court to apply to the instant facts. And again, that's the incorrect test because the Dawes test answers the question, who qualifies as an insured person? It does not answer the question whether or not a tort, excuse me, whether or not an injury arises out of the use of a vehicle. And likewise, Justice Fletcher, you had discussed the Olson case. Olson is a Dawes case because Olson was injured. He was the driver of an ambulance. The ambulance was owned by an EMT company. I forget the name. The ambulance carried U.M. coverage. Obviously, Mr. Olson was just an employee of the company. He was not a named insured under the policy. Olson came upon an accident scene and very wisely got out and placed flares around the ambulance around an accident scene in order to protect it. Olson was struck by an uninsured motorist, a hit-and-run motorist. So the question in Olson is not as it is in Haskell. The question was not whether or not Olson's injuries arose out of the use of an uninsured motor vehicle. Clearly, they did because Olson was run over by an uninsured car. Rather, the question in Olson, just as it was in Dawes, was whether or not Olson qualified as an insured person once he got out of the vehicle. And, again, the court answered yes. If there's a sufficient tie, a sufficient chain of events, you will be deemed an insured person. So it's very important that we apply the Kerrang test to these facts and not the Dawes-Olson test. There is a Hawaii ñ there's a United States District Court case directly on point, Your Honors, that does apply the Kerrang three-part test and finds no coverage. This is the Cage decision, State Farm versus Cage. It's an 874 Fed Suck case. It's discussed and cited in our briefs. It's ñ It's not binding on anybody. I mean, you're citing it for a persuasive effect. I'm sorry, Your Honor. It's persuasive. Is that ñ Persuasive, correct. It's not binding. Correct. It's ñ So this would be a case of first impression for us. I don't think so, Your Honor. By circuit. No, I don't think so, Your Honor. There are two, the Asuncion and the Fernandez cases that are also discussed in our brief. Well, we're just deciding Hawaii law, right? Correct. Now, both of those cases involve the exact same issue, Your Honor, whether or not one case was a shooting, one was a stabbing, and the question in those two cases was whether or not those torts arose out of the use of motor vehicles. Those two cases are somewhat different from Cage because Asuncion and Fernandez were pre-Kerrang. In other words, those cases predated the Hawaii Supreme Court's adoption of the three-part test, the active accessory, transportation purposes, independent acts. So Asuncion and Fernandez represented those courts, and by the way the Ninth Circuit affirmed both of those decisions in favor of the insurers, but those decisions represented the federal court's best guess as to what Hawaii law would be. Both of those courts correctly predicted that Hawaii would adopt a causal connection test in evaluating this scenario. That test was adopted by the Kerrang Court in 1993, and then Cage is important because Cage is a 1994 federal U.S. District Court in Hawaii case which applies the Kerrang test to facts that are much more favorable to the insurer than are the facts here for Haskell. And I'll run through the facts in Cage in a second, but it's important for a number of reasons. One, the Cage court did indicate that when evaluating whether or not a tort arises out of the use of a vehicle, we will use the three-part Kerrang test. This is important because Dawes had already been decided by the time Cage was decided. So the Cage district judge applied Kerrang to this type of factual, to this type of inquiry. Secondly, the Cage court interpreted the identical State Farm policy. I won't get in at any length in terms of the argument that the State Farm policy is ambiguous, but it was soundly rejected in Cage because Cage is the identical policy, and the district judge interpreted the words arising out of or resulting from the use of a vehicle to be clear and unambiguous, and he then proceeded on to the coverage issue. In Cage, the altercation between the two men, Cage and the decedent named Pesamente, was clearly provoked or was clearly far more related to the use of vehicles than is the present case with Officer Haskell. In Cage, there had been a series of disagreements between two workers at the Federal Pearl Harbor shipyard, Cage and Pesamente. Pesamente chased after Cage while Cage was driving his truck off the base.  Cage drove off the base, then turned around and drove back on the base right in front of Pesamente for the purpose of provoking a confrontation. Pesamente ran to the passenger side window of the vehicle, reached in to grab driver Cage. Cage fired a shot at him, which missed. Pesamente ran around to the other side, reached in again and grabbed Cage and began to scuffle with him. Cage shot Pesamente at point-blank range and killed him. And the question was State Farm filed a deck action, just as in the identical issue presented here, whether or not the shooting arose out of the use of vehicles. Judge Curran, the Federal District Judge, applied the Kerrang test, the three-part test, and said no, there was no coverage, even though there were two scuffles within the vehicle. In other words, Pesamente had leaned in both sides of the vehicle in order to provoke a confrontation. The shooting occurred while the State Farm-insured Cage was seated in a vehicle. And so clearly the operation of the vehicle in that case was designed to provoke a confrontation with Pesamente. So far more favorable facts for coverage in that case than there are for Officer Haskell. And then quickly the two other Federal decisions, Your Honors, Asuncion and Fernandez. Both of those, again, the Federal Court in Hawaii adopted the causal connection test and decided under both of those factual scenarios there was no coverage. Asuncion is a pedestrian gunman who walks up to the plaintiff's decedent, leans in the car, fires a weapon, and kills the decedent, kills the PIP claimant. The car had been running. It was in idle. It was sitting at the Farrington High School parking lot. But the Court found no coverage there under the predecessor to the Kerrang test, the causal connection test, even though the shooting occurred within a vehicle, because the Court concluded that the vehicle wasn't an active accessory in the loss. The vehicle was stopped. It wasn't being used for transportation purposes at the time of the shooting. And finally, there were independent acts to vitiate the causal connection between the shooting and the use of the vehicle, namely it was the result of an intentional tort. Fernandez, the other Federal case, same thing. There, two vehicles are being driven, one by a state farm insured, one by a local ne'er-do-well. They drive by one another, flash their high beams, exchange obscene gestures. They both turn around, pull over the side of the road. It leads to an altercation and a stabbing. There's a claim for uninsured motorist and PIP benefits, just as there is in this case. The Federal judge in Hawaii applied the causal connection test and found no coverage, because at the time of the loss, even though the interaction of the two vehicles directly led to the stabbing, the court found that the vehicles weren't an active accessory in the stab, in the stabbing wound. They weren't being used for transportation purposes at the time of the stabbing. And also there were, indeed, independent acts, namely the scuffle and the stabbing. So all these Hawaii cases have very clearly established the point that the causal connection test is the correct one to apply. It's contained in the district court's opinion. It is, Your Honor. And I emphasize it only to make sure that we apply the correct test. Finally, I know Mr. Bickerton is going to deal with the issue of this court's jurisdiction and as to whether or not there's a sufficient amount of controversy. That's dealt with at some length in our briefs. I would simply adopt that and certainly be prepared to answer any of the court's questions in that regard. We feel that U.M. and no-fault coverage and prospective fees were, indeed. Satisfy the jurisdictional amount. Yes, Your Honor. Are there any questions? No questions. Thank you, Your Honor. Thank you, Justice. Thank you. Thank you. I have spent many years listening to our district court tell us, for example, that there was no tort of bad faith and never got an apology for the many clients who had their removed cases dismissed with prejudice for all time, up until the time the Hawaii Supreme Court explained that there is a tort of bad faith in Hawaii. It's simply not persuasive to cite pre-Karang district court decisions to this court as a basis for anything in this case. The Hawaii Supreme Court has only addressed intentional shooting in a U.M. case one time, and that was in Ganaron, and they found coverage there. And Ganaron is the test that we urge the court to apply as a floor. The Karang case was a liability case. It did deal with the question of what the phrase arising out of the use of an automobile or motor vehicle means in a statute. That is the phrase that is used in the liability insurance statute. That phrase does not appear in the U.M. statute. The U.M. statute uses the phrase injury resulting therefrom, and it's unclear what the therefrom means, but it appears to refer back to the operation of a motor vehicle. The Ganaron case said on a literal reading of this statute, a shooting is covered. Karang is helpful to us to know what the Hawaii Supreme Court might do if confronted with the arising out of the use of language, but not really when it's used in a policy. In a policy, it's got to be construed against State Farm. That has been done time and time again. One of the leading cases is Wendell. Wendell is the case that construed that language against State Farm, and we submit Wendell would be followed. But there's absolutely no reason why Wendell's construction of the identical State Farm language would not be followed by the Hawaii Supreme Court, which has already shown in every single decision that it finds coverage or tries to find coverage where it can. It is in the most liberal wing, if you will, of the insurance coverage case law. It sides with Oklahoma, with Colorado, with Minnesota, and so forth. The idea that Karang, let's just say we're going to take the statutory definition and use Karang and say we're now going to construe a State Farm policy using Karang, which it's not an appropriate use for it. But let's say we're going to do that. Karang did not say there is a three-part test. Karang cited to two cases Krug and a case that Judge Nelson decided, State Farm versus Davis or Davis versus State Farm. And it used those as illustrations of cases that had cited the Ganoron analysis in different contexts to show that the Ganoron analysis had other applications beyond just its narrow focus of the issues that were there in Ganoron. The Court didn't say you must follow the Krug case and let me explain why it could not have. One of the factors in Minnesota is that the car must be, the use must be a transportation use, and that results from the fact that the Minnesota statute requires that. The Minnesota statute says use or operation of a motor vehicle as a motor vehicle. So in Minnesota, they have to have a transportation use involved. Hawaii doesn't require that. So the idea that we should just transplant and make some chimera by taking a three-factor test from Minnesota and making that a rigid test is wrong. They also endorsed the Davis opinion in Karang, which simply said minimal causation. So we would urge the Court to look at the Ganoron case. Thank you very much. Thank you. Thank you. The case just argued is submitted for decision. Before hearing the last case, the Court will take a 10-minute recess.
judges: Schroeder, Dw Nelson, W. Fletcher